IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHARON ENOCHS,

        Plaintiff,

vs.                                      Civil Action 2:09-CV-913
                                            Judge Watson
                                            Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

       This is an action instituted under the provisions of 42 U.S.C. §§405(g), for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Errors*, the Commissioner's *Memorandum in Opposition* and plaintiff's *Response to Defendant's Memorandum in Opposition.*

       Plaintiff Sharon Enochs filed her initial application for benefits on August 20, 2001, alleging that she has been disabled since October 17, 2000, due to a cervical fusion and radiculopathy. *A.R.* 47-49, 67. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

       An administrative hearing was held on July 14, 2003, before Administrative Law Judge Melvin Padilla, *A.R.* 261-97, who determined that plaintiff was able to perform work requiring medium exertion and was therefore not disabled. *A.R.* 340-50. The Appeals Council denied plaintiff's request for review, *A.R.* 4-6, and Judge Padilla's decision became the Commissioner's final decision.

       Plaintiff sought review of that decision in this Court. *Enochs v. Commissioner of Social Security,* No. 2:04-CV-0717. This

Court remanded the matter to the Commissioner for further administrative proceedings. *A.R.* 354-66.[1]

On remand, the same administrative law judge held an administrative hearing on August 29, 2006. *A.R.* 589-624. Plaintiff, represented by counsel, appeared and testified at the second administrative hearing, as did Suman Srinivasan, who testified as a vocational expert. In a decision dated June 29, 2007, the administrative law judge found that plaintiff suffers from the severe impairments of cervical spine degenerative disease with residuals of fusion surgery and chronic complaints of neck pain, adjustment disorder with depressed mood, and a pain disorder. *A.R.* 328. The administrative law judge went on to find that plaintiff's impairments may affect her ability to perform some basic work related functions, but that the severity of these impairments neither meet nor equal any listed impairment. The administrative law judge found that plaintiff has the residual functional capacity to perform the basic exertional requirements of light work so long as she is allowed to alternate positions as necessary, is restricted from climbing ladders and scaffolds, and is restricted from work involving unprotected heights and constant or repetitive up and down movement of the neck. She is also limited to occasional stair climbing and overhead work, and is limited to low stress jobs although she is not precluded from dealing with the public. That residual functional capacity permits, the administrative law judge found, the performance by plaintiff of her prior relevant work. *A.R.* 329. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *A.R.* 316-29. The Appeals Council denied plaintiff's request for review, *A.R.* 298-303,

---

[1] Meanwhile, plaintiff filed a second application for disability insurance benefits on June 25, 2004, which the Social Security Administration consolidated with her earlier application.

leaving the administrative law judge's decision as the Commissioner's final decision.

Plaintiff was 56 years old at the time the administrative law judge issued his decision. *A.R.* 25, 47. She has the equivalent of a high school education and her previous jobs included work as a warehouse manager, customer service manager and assembler. *A.R.* 68, 73.

In October 2000, plaintiff underwent a vertrectomy at C-6, arthrodesis at C5-6 and C6-7, bone allograft, and anterior plate fixation on October 16, 2000. *A.R.* 140-42.  Michael Miner, M.D., Ph.D., was her treating neurosurgeon.  On December 5, 2000, Dr. Miner noted plaintiff, in many ways, had done well, and even though her mobility was limited, her strength was normal. *A.R.* 184. However, Dr. Miner did not think plaintiff could return to work because of the pain she had looking down or up or side-to-side movements. *Id.* Cervical spine x-rays showed status post fusion with stable hardware and bone graft. *A.R.* 185. An MRI of the lumbar spine taken on December 19, 2000, showed a small disc protrusion at L4-5 with mild spinal stenosis and disc protrusion at T12-L1, and no stenosis. *A.R.* 180. On December 20, 2000, Dr. Miner noted that plaintiff's neck pain was improving. *A.R.* 179. On February 13, 2001, Dr. Miner reported that plaintiff had developed pain in the left side of her neck which was somewhat relieved by Darvocet. *A.R.* 175. In March 2001, Dr. Miner reported that plaintiff had persisting pain and numbness. *A.R.* 172.

In August 2001, Martin Bertram, M.D., performed a consultative physician examination of plaintiff at the request of the state agency.  Upon clinical examination, Dr. Bertram found that plaintiff's cervical motion was reduced up to 20%. There were sensory changes in the left upper extremity, but reflexes and strength were normal. There was no muscle atrophy or loss of dexterity.  Dr. Bertram diagnosed myofascial pain and concluded

that plaintiff was not limited in performing physical activities. *A.R.* 161-66.

On September 11, 2001, Dr. Miner found normal strength and no sensory deficits. He did not note any myofascial pain or tenderness. Dr. Miner reported that plaintiff's numbness and tingling in her left arm had resolved following her surgery. Unfortunately, she thereafter developed significant neck pain radiating to the back of her head which has severely diminished her capacity to work. He recommended referral to a chronic pain specialist and commented that it was a "reasonable thing to assist her with her quest for disability." *A.R.* 169.

On an Attending Physician's Statement prepared for plaintiff's disability carrier, Dr. Miner reported that plaintiff could work less than 16 hours per week. She was restricted from lifting more than 25 pounds, driving more than 25-45 miles. According to Dr. Miner, plaintiff's prognosis for recovery was poor. *A.R.* 168.

Plaintiff began treatment with neurologist Vadak Ranganathan, M.D., on November 11, 2001. *A.R.* 210-11. On December 11, 2001, Dr. Ranganathan diagnosed spinal stenosis status post surgery with failed neck syndrome, left occipital neuralgia, and muscle contraction headaches *A.R.* 216-17. A head MRA on December 21, 2001, was negative for any abnormality. *A.R.* 215. A January 18, 2002, nerve conduction study showed mild left C5-6-7 radiculopathy. *A.R.* 214. A January 25, 2002, cervical spine MRI study showed moderate central spinal canal stenosis at C6-7 and mild central canal stenosis at C5-6 and C4-5. *A.R.* 212-13.

In March 2002, a state agency physician reviewed the record and opined that plaintiff had the residual functional capacity to perform work in the medium exertional range, with no ladder, rope, or scaffold climbing, and only occasional ramp and stair climbing. *A.R.* 219-27.

4

Arthur Neil Cole, M.D., examined plaintiff on May 14, 2002, for complaints of neck pain with increasing left upper extremity numbness. Dr. Cole noted a slightly decreased range of motion of the cervical spine range without tenderness. Neurological examination was normal, with intact sensation, muscle tone, gait, and coordination. Dr. Cole diagnosed C6-7 radiculopathy, primarily due to stenosis. He recommended a myelogram. *A.R.* 229. On May 22, 2002, a cervical myelogram and CT scan revealed status-post anterior fusion at C5-C7, with mild canal narrowing and mild left C5-6 neural foraminal narrowing. *A.R.* 232-33.

Dr. Ranganathan reported on February 19, 2003, that plaintiff had decreased neck flexion and extension, and restricted lateral movement to 50% of normal, with associated headache pain, all as a result of failed neck surgery, occipital neuralgia, and chronic radiculopathy. According to Dr. Ranganathan, plaintiff's pain and other symptoms occasionally interfered with the attention and concentration necessary to perform simple work tasks; however, plaintiff would be capable of low stress work. Plaintiff could walk one block at a time, sit for thirty minutes to an hour, and stand for fifteen minutes. She could sit and stand/walk for less than two hours each in an eight hour work day. Plaintiff would need two to four unscheduled breaks of five to ten minutes each during the work day. Plaintiff would need to be able to change positions at will, and could rarely engage in right or left neck turning, crouching, squatting, or ladder climbing. She could engage in occasional neck flexion, looking up, holding the head in a static position, twisting, stooping, and stair climbing. Plaintiff would be limited in her ability to reach, grasp, and engage in fine manipulation for 50% of the work day. Dr. Ranganathan also commented that plaintiff would likely be absent two days a week as a result of her impairments or treatment. *A.R.* 234-39.

Joshua Richards, M.D., has been plaintiff's longtime

primary care physician. *A.R.* 254-60; 510-12, 569-79. On February 26, 2003, Dr. Richards noted plaintiff's prognosis to be "ongoing radiculopathy s/p surgical decompression." According to Dr. Richards, plaintiff would be capable of some low stress work in a non-lifting capacity but could sit, stand or walk for only four hours per day. Dr. Richards also opined that plaintiff could not work in a competitive work environment. *A.R.* 248-53.

A May 13, 2003, MRI of the brain was normal as was an MRA of the brain. *A.R.* 467, 470. An MRI of the cervical spine taken on February 25, 2004, showed status post fusion, a suggestion of bulging disc at C7-T1, and of disc level changes at C5-6. *A.R.* 468-69.

In September 2004, and January 2005, state agency physicians reviewed the record and opined that plaintiff could lift/carry 25 pounds frequently and 50 pounds occasionally, stand and walk for 6 hours a day, and sit for 6 hours a day. Plaintiff was limited in reaching in all directions, and she could never climb ladders, ropes or scaffolds. *A.R.* 473-77.

Dr. Richards reported on November 26, 2004, that plaintiff had been unable to work for some time, and that he "thought she was already on disability." *A.R.* 507-09.

A September 2004 nerve conduction study revealed cervical radiculopathy. *A.R.* 516. A December 2004, MRI of the brain and MRA of the head were again normal. *A.R.* 554-55. An MRI of the cervical spine showed post-surgical changes, no cord abnormalities, and no foraminal stenosis. *A.R.* 554-55.

Dr. Ranganathan continued to treat plaintiff through February 2006. *A.R.* 556-66. Plaintiff continued to complain of headaches. Nerve conduction studies of the upper extremities showed mild C5-6-7 radiculopathy, bilateral cubital tunnel syndrome, and mild left carpal tunnel syndrome. *A.R.* 556-66. April 2005 EEG studies of the brain were normal, *A.R.* 564, as were March 2006 EEG

studies, *A.R.* 567. February 2006 left knee x-rays showed osteoarthritic changes. *A.R.* 574.

In July 2006, Dr. Ranganathan diagnosed failed cervical laminectomy, occipital neuralgia, cervical lumbar strain, and tension headaches. Dr. Ranganathan cited clinical findings and objective signs of surgical changes, flexion changes, motor loss, and reduced grip and strength. Dr. Ranganathan also reported that plaintiff's medications caused drowsiness, dizziness, and weakness. He opined that emotional factors of depression and anxiety affected plaintiff's physical condition. According to Dr. Ranganathan, plaintiff's pain occasionally interfered with the attention and concentration needed for simple work tasks, plaintiff would be capable of low stress jobs. Plaintiff would be able to sit for up to one hour, stand for fifteen minutes, and walk for one block without interruption. Throughout an eight hour work day, plaintiff would be able to sit for less than two hours total, and stand/walk for less than two hours total. Dr. Ranganathan opined that plaintiff would need to shift at will from sitting to standing or walking, and would need to take unscheduled breaks during the work day. Plaintiff would be able to lift up to ten pounds occasionally. She could occasionally look up or down, and hold her head in a static position, but could rarely turn her head to either side. She could occasionally twist, stoop, and climb stairs, but could rarely crouch or climb ladders. She could use her upper extremities for activities for 45% of the time during an eight hour work day. Dr. Ranganathan believed that plaintiff would be absent from work about three days a month due to her impairments and treatment. *A.R.* 580-84.

On August 24, 2006, Dr. Richards agreed with Dr. Ranganathan's assessment. *A.R.* 585. On October 13, 2006, Dr. Richards opined plaintiff could work 4 hours a day in a non-lifting capacity, so long as she is able to have frequent breaks. *A.R.* 588.

At the first administrative hearing, plaintiff testified that she is disabled due to back and neck pain, vertigo, and knee osteoarthritis. *A.R.* 267-71. At the August 29, 2006 administrative hearing, plaintiff testified that her neck condition had not improved and was sometimes worse. *A.R.* 592. She continues to see Dr. Richards, her primary care physician, on an as needed basis; she sees Dr. Ranganathan approximately every three months. *A.R.* 593. She noted that some of her medications make her feel like a drunk; she therefore uses them at night. *A.R.* 594. She sleeps five to six hours at night and naps for a couple of hours during the day. *A.R.* 594-95.

In his most recent decision, the administrative law judge rejected the opinions of disability expressed by plaintiff's treating physicians: " The overall evidence of record, including the records or her treating physicians as discussed above, does not support Dr. Ranganathan and Dr. Richards' opinions that she is limited to less than full time work." *A.R*. 325. Instead, the administrative law judge appeared to rely on the 2004 and 2005 opinions of the reviewing state agency physicians in assessing plaintiff's residual functional capacity. Although those physicians opined that plaintiff is capable of medium exertion, the administrative law judge "allowed [her] the benefit of the doubt given her subsequently diagnosed conditions of carpal tunnel and cubital tunnel syndrome." *Id*. He therefore found that plaintiff is limited to "at least light work" with certain postural and non-exertional limitations. *Id.* The administrative law judge rejected plaintiff's subjective complaints, to the extent that they would impose greater limitations, based on plaintiff's daily activities and level of functioning. *A.R.* 327.

Plaintiff contends that the administrative law judge failed to properly weigh the opinions of her treating physicians, Drs. Miners, Richards and Ranganathan, as required by the

8

Commissioner's own regulations. Plaintiff also contends that the administrative law judge erred by rejecting her subjective complaints of pain, including headaches.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In evaluating subjective complaints of disabling pain, the Court looks to the record to determine whether there is objective medical evidence of an underlying medical condition. In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). The Court must

determine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365 (6th Cir. 1991); *Stanley v. Secretary of Health and Human Services,* 29 F.3d 115, 117 (6th Cir. 1994) (*quoting Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). *See also* 42 U.S.C. §423(d)(5)(A).

Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); 20 C.F.R. §406.1527(d)(2). If the administrative law judge finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009); *Wilson*, 378 F.3d at 544. In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §406.1527(d)(2),(4).

Plaintiff's complaints of chronic and disabling pain are supported by the evidence of record, particularly the findings and opinions of her treating physicians. Dr. Miner opined that

10

plaintiff could work no more than 16 hours per week. *A.R.* 168. Dr. Ranganathan opined that plaintiff was very restricted and could do limited work for less than 4 hours a day. *A.R.* 581-84. Based on his long-term treating physician relationship with plaintiff, Dr. Richards opined that plaintiff could work 4 hours a day in a non-lifting capacity, and only if she had frequent breaks. *A.R.* 588.

Moreover, the administrative law judge rejected plaintiff's complaints of headaches that result in functional limitations:

> The claimant also testified to migraine headaches three or four times a month, that she said kept her in bed all day. She said that she was treated with Imitrex for her headaches. Brain studies showed no evidence of abnormality, and clinically, she had no focal neurological deficit. Her headaches were felt to be related to muscle tension. Her treatment records do not indicate that she reported her treatment for headaches as ineffective, or that her headaches were incapacitating as indicated in her testimony. She reported that her vision changes and dizziness stopped when her chronic cough improved.

*A.R.* 323. To the contrary, the record reflects that plaintiff complained to Dr. Miner after her surgery of significant neck pain radiating to the back of her head. *A.R.* 169. Plaintiff's neurologist, Dr. Ranganathan, diagnosed muscle contraction headaches on November 11, 2001. *A.R.* 216-17. Dr. Ranganathan also diagnosed occipital neuralgia and associated headache pain in February 2003. A.R. 234-39. The record shows that plaintiff has continued to complain of headaches. *A.R.* 241-47, 513-26, 552-68.

Plaintiff's treating physicians have corroborated plaintiff's subjective complaints of pain. Moreover, the findings and opinions of plaintiff's treating physicians are consistent with other physician-provided evidence of record. For example, Dr. Cole, a consultative examiner, diagnosed C6-7 radiculopathy, primarily

due to stenosis. *A.R.* 229.  The cervical myelogram and CT scan ordered by Dr. Cole revealed status-post anterior fusion at C5-C7, with mild canal narrowing and mild left C5-6 neural foraminal narrowing. *A.R.* 232-33.

The administrative law judge declined to give these treating physicians' findings and opinions controlling weight. *See A.R.* 324-25.  However, the administrative law judge erred as a matter of law by not continuing in his evaluation of their findings and opinions as required by 20 C.F.R. §404.1527(d)(3) - (5), "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *See Wilson*, 378 F.3d at 544.  As the Commissioner of Social Security has instructed:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p.  Because the administrative law judge failed to apply the correct legal standard to the treating physicians' findings and opinions, his evaluation of those findings and opinions was erroneous as a matter of law. *See Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 746 (6th Cir. 2007).

In sum, this Court concludes that the administrative law

judge failed to properly consider plaintiff's complaints of pain and the findings and opinions of her treating physicians.

Where, as here, the administrative law judge's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). A court can award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994)(citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all the factual issues have been resolved and that the record adequately establishes plaintiff's entitlement to benefits. Specifically, as noted above, plaintiff's long-term treating physicians, Drs. Miners, Richards and Ranganathan, have articulated findings and opinions to the effect that plaintiff is not capable of performing substantial gainful activity. In addition, plaintiff's allegations of disabling pain are supported by those opinions as well as by the other evidence of record. Moreover, there is no substantial evidence to the contrary.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** to the Commissioner of Social Security for an award of benefits.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P.

13

72(b). Response to objections must be filed within fourteen(14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers,* 18 *Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

                                       *s/Norah McCann King*
                                        Norah McCann King
                            United States Magistrate Judge

January 26, 2011